IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CR-0367-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ERIC A. REYES ) | |
| ) | |
| Defendant. ) | |

On February 19, 2021, Eric A. Reyes ("Reyes" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 70]. On August 6, 2021, Reyes, through counsel, filed a memorandum in support of his motion for compassionate release [D.E. 73]. On August 17, 2021, the United States responded in opposition [D.E. 75]. As explained below, the court denies Reyes's motion.

I.

From 2004 to November 14, 2008, Reyes was an armed, high-volume drug dealer in Johnston County. See Presentence Investigation Report ("PSR") [D.E. 58-1] ¶¶ 9–14; [D.E. 3]. On April 23, 2009, pursuant to a written plea agreement, Reyes pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine, a quantity methamphetamine, and more than 1,000 kilograms of marijuana, and to possession of a firearm by a convicted felon. See [D.E. 3, 24, 25]. On December 15, 2009, the court held Reyes's sentencing hearing and adopted the facts set forth in the PSR. See PSR; [D.E. 40, 41]. The court calculated Reyes's offense level to be 37, his criminal history category to be VI, and his advisory guideline range to be 360 months to life.

After granting the government's motion for downward departure and considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Reyes to 240 months' imprisonment on count one and 120 months' concurrent imprisonment on count two. See [D.E. 41] 6. Reyes did not appeal.

On February 2, 2016, Reyes moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.1, and Amendment 782. See [D.E. 48]. On July 16, 2018, the court denied Reyes's motion to reduce his sentence. See [D.E. 52]. On June 24, 2018, Reyes appealed the denial of his motion for a sentence reduction. See [D.E. 53]. On September 27, 2018, the United States Court of Appeals for the Fourth Circuit dismissed Reyes's appeal for failure to prosecute. See [D.E. 61].[1]

On February 19, 2021, Reyes moved for compassionate release [D.E. 70]. On August 17, 2021, the government responded in opposition. See Resp. in Opp'n [D.E. 77].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have

---

[1] To the extent that Reyes seeks reconsideration of this court's decision to deny relief under Amendment 782 [D.E. 70], the court denies the request as meritless.

2

served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states that

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Reyes unsuccessfully sought administrative relief before filing his motion for compassionate release. See [D.E. 73-2] 2–4. The government has not invoked section 3582's exhaustion requirement, and court assumes without deciding that Reyes exhausted his administrative remedies. Cf. United States v. Muhammad, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021).

Reyes seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Reyes cites the incapacitation of the mother of his minor children, the COVID-19 pandemic, his health condition

5

(pre-diabetes), the non-retroactive change in statutory punishment for his offenses after his conviction and sentencing, his rehabilitative efforts, and his supportive family. See [D.E. 70, 73]. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Reyes argues that his pre-diabetes places him at heightened risk of serious infection from COVID-19. See [D.E. 13] 13–14. Reyes cites a medical study about the incidence of COVID-19 hospitalization among those with pre-diabetes and the difficulty of controlling COVID-19 spread in prison. See id. at 11–15. Although the most recent information from the Centers for Disease Control ("CDC") categorizes those with Type 1 and Type 2 diabetes as higher risk for severe COVID-19 infection, the CDC does not list pre-diabetes with that category. See Centers for Disease Control, Groups At Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 3, 2021). Moreover, beyond generalized arguments about the spread of COVID-19 within the federal facility at FCI Jesup, Reyes does not argue he is unable to manage his health conditions while incarcerated or that the BOP is not treating his health conditions. Furthermore, arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the current conditions at FCI Jesup[3] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Nov. 3, 2021).

---

[3]As of November 3, 2021, FCI Jesup has reported zero current inmate confirmed test positives, 461 inmate recoveries, and two inmate deaths. See https://www.bop.gov/coronavirus (last visited Nov. 3, 2021).

6

In July 2021, Reyes recovered from an asymptomatic COVID-19 infection, and now has natural antibodies from COVID-19. See [D.E. 74] 51–52. Reyes also is fully vaccinated against COVID-19. See [D.E. 77] 3; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Having natural antibodies and being fully vaccinated reduces Reyes's risk of serious reinfection. Accordingly, reducing Reyes's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "family circumstances" policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Reyes claims that the mother of two of his minor children is incapacitated due to multiple sclerosis ("MS"). [D.E. 70] 1.[4] Courts have looked to the relevant BOP Program Statement for guidance in reviewing requests based on the incapacitation of a spouse or family caregiver. See, e.g., United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished); cf. United States v. Burrell, No. 15-CR-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23,

---

[4] Reyes has four children with three women. See PSR ¶ 41.

7

2020) (unpublished) (acknowledging that a court may find an extraordinary and compelling reason other than those in the application notes of U.S.S.G. §1B1.13 or BOP guidance). For requests based on incapacitation of the caregiver to a defendant's minor child, "incapacitation" is defined as "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10 at 7–8; see Bolden, 2020 WL 4286820, at *4. The BOP Program Statement says that information and documentation must show the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. Id.

Reyes has failed to prove that he meets the family circumstances policy statement. He claims the mother of two of his minor children is incapacitated due to MS. See [D.E. 70] 1. The woman has stated that she has MS. See [D.E. 73-5] 3–4. However, she was diagnosed with MS several years before Reyes was sentenced and was caring for her two children at that time. See id. Reyes has not provided any records indicating her condition has worsened or become unmanageable or that no other family member can care for the children. Moreover, Reyes's release plan also does not specify how he would assist in caring for these two minor children. On this record, Reyes has not shown that his family circumstances are extraordinary and compelling and reducing Reyes's sentence is inconsistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(C)

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Reyes's health condition and family circumstances, and Reyes's rehabilitative efforts are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the

8

possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Reyes being fully vaccinated and having natural antibodies diminishes the risk associated with COVID-19. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Reyes's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Reyes is 43 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute more than for than 5 kilograms of cocaine, a quantity methamphetamine, and more than 1,000 kilograms of marijuana, and possession of a firearm by a convicted felon. See PSR ¶¶ 1–14. From 2004 until November 14, 2008, Reyes engaged in serious criminal behavior involving a large quantity of illegal narcotics and firearms. See PSR ¶¶ 9–13. Reyes was accountable for distributing 11,420 pounds of marijuana, 271.5 kilograms of cocaine, and 479.4 grams of methamphetamine. See id. Reyes also possessed multiple firearms in connection with his drug trafficking. See id. ¶ 11. Reyes's serious criminal conduct was nothing new. When Reyes committed his federal offense, Reyes had convictions for possession of cocaine, possession of marijuana, carrying a concealed weapon, possession with intent to manufacture, sell, or deliver a schedule II controlled substance, maintaining a vehicle, dwelling, or place for controlled substances, possession with intent to sell and deliver a controlled substance, possession with intent to sell and deliver cocaine, conspiracy to traffic cocaine, and driving while impaired. See id. ¶¶ 16–25. Reyes has performed poorly on supervision. See id. ¶¶ 20, 29. Reyes has taken some positive steps while incarcerated, completing numerous education and vocational courses and working several jobs in the prison. See [D.E. 73-4]. However, in 2019 Reyes was sanctioned for giving or accepting money

9

without authorization, possessing a non-hazardous tool, and possessing an unauthorized item, and he also had infractions in 2013, 2014, 2015, and 2018. See [D.E. 49-3].

The court must balance Reyes's mixed record while incarcerated with the extraordinary seriousness of his criminal conduct and his deplorable criminal history. The court also has considered Reyes's potential exposure to COVID-19, his medical conditions, his age (42), and his family circumstances. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court recognizes Reyes has potential employment qualifications and a supportive family. See [D.E. 73] 16–17; [D.E. 73-3]; [D.E. 73-5]. However, Reyes's proposed release plan lacks the necessary detail to provide for the protection of the public and Reyes's own health. Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Reyes, the section 3553(a) factors, Reyes's arguments, the government's persuasive response, and the need to punish Reyes for his serious criminal behavior, to incapacitate Reyes, to promote respect for the law, to deter others, and to protect society, the court denies Reyes's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Reyes's request for home confinement, see [D.E. 73] 15–18, Reyes seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL

10

5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Reyes requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Reyes's request for home confinement.

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 70, 73], DISMISSES defendant's request for home confinement [D.E. 70, 73], and DENIES as meritless defendant's motion for reconsideration and reduction of sentence [D.E. 70].

SO ORDERED. This 5 day of November, 2021.

JAMES C. DEVER III
United States District Judge